IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Robert Selest Drayton,                          )
                                                )
                      Plaintiff,                )       Civil Action No.2:10-cv-03171-TMC-BHH
                                                )
              v.                                )       **REPORT AND RECOMMENDATION**
                                                )       **OF MAGISTRATE JUDGE**
                                                )
Warden Lavern Cohen, Ridgeland                  )
Correctional Institution; Lt. Joseph            )
Powell; Mr. Sergeant Simmons;                   )
Nurse K. Kay, LPN; Lieutenant                   )
D. Lloyd; Sergeant J. Perry;                    )
Mrs. Connelly, Medical Supervisor               )
Lieber Corr.; Nurse Jennifer Scott,             )
LPN; and Warden Wayne McCabe,                   )
Lieber Correctional Institution,                )
                                                )
                      Defendants.               )
                                                )
_____)

        The plaintiff, a state prisoner proceeding pro se, brought this action pursuant to Title

42, United States Code, Section 1983. This matter is before the Court upon Defendants'

Motion for Summary Judgment. (Dkt. No. 49.)

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and

Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are

referred to a United States Magistrate for consideration.

        The plaintiff brought this action on or about December 21, 2010. On August 15, 2011,

Defendants filed a Motion for Summary Judgment. By order filed August 16, 2011, pursuant

to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the

dismissal procedure and the possible consequences if he failed to adequately respond to

the motion.   On or about November 23, 2011, the plaintiff filed a response opposing

Defendants' Motion for Summary Judgment. (Dkt. No. 78.)[1] Defendants filed a Reply. (Dkt. No. 82.)

## PROCEDURAL FACTS

Plaintiff, who is currently housed at McCormick Correctional Institution ("MCI"), alleges claims pursuant to 42 U.S.C. § 1983. Plaintiff filed his original Complaint on or about December 21, 2010, naming Warden Cohen, Lieutenant Joseph Powell, and Sergeant Simmons as Defendants. (See Dkt. No. 1.) Plaintiff alleges that in August of 2010, while he was housed in "lock-up room #148" at Ridgeland Correctional Institution ("RCI"), inmate McIlwain was brought to lock up and placed in the same cell as Plaintiff. (Dkt. No. 1 at 3 of 8.) Plaintiff alleges that McIlwain was placed in lock up "for masturbating off of an officer and then having to be physically restrained and maced when confronted." (Id.) Plaintiff states that after he and Inmate McIlwain were in the cell together for "only one day," Inmate McIlwain "would pull his penis out in front of [Plaintiff] and ejaculate on the cell floor and leave it." (Id.) Plaintiff alleges that when he spoke to Inmate McIlwain about McIlwain's behavior and asked McIlwain to "clean up what he had left on the floor," Inmate McIlwain "immediately got hostile with [Plaintiff] and threatened [Plaintiff] with physical retaliation if [Plaintiff] didn't mind [his own] business." (Id.)

Plaintiff alleges that when the behavior continued, he alerted Sergeant Morris that Plaintiff and McIlwain "would be getting into a physical confrontation if somebody was not moved" and stated to Morris that he "was not trying to get into any physical altercation." (Id.) Plaintiff states that Sergeant Morris moved Inmate McIlwain to another room that night but that the next morning, Defendant Simmons "moved Inmate McIlwain back into the cell with [Plaintiff] stating the Warden told him to do it." (Id.) Plaintiff alleges that he "let . . . Simmons

_____

[1]Both Plaintiff's original Complaint and Amended Complaint were signed under penalty of perjury. See 28 U.S.C. § 1746.

know" that Plaintiff and McIlwain "were not getting along and a potential physical confrontation was possible." (Id.) Plaintiff states that Defendant Simmons told Plaintiff "to just be patient and hold on that [McIlwain] wouldn't be in the cell with [Plaintiff] more than 1 to 3 days and [McIlwain] would be doing back to general population." (Id.) Plaintiff contends that Inmate McIlwain "continued to do the nasty sexual actions in front of [him] and would ejaculate all over the floor and [Plaintiff's] legal books." (Id. at 3-4.)

Plaintiff alleges that he wrote the "SMU Lieutenant," Defendant Powell, and explained to Powell that Plaintiff's roommate "was being very disrespectful sexually in front of [Plaintiff]" and that whenever Plaintiff "say[s] something to him about it, [McIlwain] gets very hostile and violent." (Id. at 4.) Plaintiff states that he told Defendant Powell in this writing that Plaintiff "was trying to avoid a physical confrontation but [that Plaintiff] didn't feel safe being in the room" with McIlwain and that someone "need[ed] . . . to be moved." (Id.) Plaintiff alleges that he then spoke to Powell "concerning the issue and [Powell] said that the Warden told [Powell] not to move anybody without having prior consent from [the Warden], no matter what the case under no circumstances was anybody to be moved." (Id.) Plaintiff further stated,

> I asked Lieutenant Powell what if someone is about to fight, and defendant Lieutenant Powell responded that the Warden must want us to fight because he said under no circumstances was anyone to be moved. . . So I wrote Warden Defendant Levern Cohen, and told him what my roommate was doing and that I did not feel safe. I did not receive an answer. I wrote him again on September 2, 2012, and then spoke to him briefly while on recreation. Defendant . . . Cohen told me that he received my request form and that he would be getting back to me about the situation.

(Id.) Plaintiff further alleges that he spoke with mental health counselor Mr. Hodges concerning Plaintiff's "feeling uncomfortable and unsafe in [his] cell with [his] roommate" but that still nothing was done. (Id. at 5.)

3

On September 18, 2010, Inmate McIlwain assaulted Plaintiff. (Id. at 5.) Plaintiff alleges that after cleaning McIlwain's semen off the cell floor, Plaintiff told McIlwain that he was "going to talk to someone" to see about a room change because Plaintiff cannot "deal with this anymore." (Id.) According to Plaintiff, McIlwain told Plaintiff that McIlwain "would beat [Plaintiff's] ass first," and while Plaintiff's back was turned, McIlwain hit Plaintiff in the face "hard" with an object. (Id.) Plaintiff states that the first blow knocked him against the sink and that he was knocked out after two more blows. (Id. at 5-6.) Plaintiff alleges that when he came to, Inmate McIlwain punched Plaintiff in the face again. (Id. at 6.)

Once Plaintiff heard Officer Odom coming, Plaintiff called Officer Odom and told Odom that he needed a room change and medical attention. (Id.) Once McIlwain was taken out of the cell, Plaintiff states that he told the nurses and Lieutenant Lowery that McIlwain "jumped on and beat" Plaintiff with a brush. (Id.) Plaintiff states that he was "rushed to the emergency room where" it was discovered that Plaintiff "suffered a fractured nasal bone, jaw, multiple facial lacerations, and close head trauma and contusions." (Id.)

In his original Complaint, Plaintiff alleged that Defendants Cohen, Powell, and Simmons violated his Eighth Amendment rights in that the Defendants were "deliberate[ly] indiffere[nt] to . . . unreasonable risk of serious harm and dangerous conditions." (Id. at 8.)

Plaintiff filed an Amended Complaint, incorporating his original Complaint, on or about February 18, 2011, adding the following Defendants: Warden Wayne McCabe (Lieber Correctional Institution), Lieutenant D. Lloyd, Sergeant J. Perry, Mrs. S. Connelly, Nurse J. Scott, and Nurse K. Kay. (See Dkt. No. 19.) In the Amended Complaint, Plaintiff adds a claim for deliberate indifference to serious medical needs and states, "Plaintiff is still not being seen in medical sick-call, still not provided with pain medication for injuries, . . . has not been seen in medical sick-call for any medical problems since last year . . . despite constant and numerous sick-calls and complaints." (Dkt. No. 19 at 1 of 20.) Plaintiff also

4

complains that his mail was stolen by inmate dorm workers and passed around, such that

Plaintiff's safety was "endangered" and that "numerous threats . . . [were] made on Plaintiff's

life" because in some of that mail, Plaintiff reported the actions of other inmates. (Id.)

In addition to his claims related to Defendants' failure to protect him from Inmate

McIlwain's attack, Plaintiff asserts in his Amended Complaint medical claims and a claim

for "denial of rights to access of courts." (Id. at 4.) Plaintiff states that since he arrived at

Lieber on November 11, 2010, he has "constantly complained about the chronic pain . . .

in [his] left eye, underneath [his] left eye, [his] nose and . . . jaw" as a result of the injuries

sustained in the attack at RCI. (Id. at 11.) He complains that he did not receive sufficient

medication for the pain and that even though he had an ophthalmologist appointment at RCI

prior to his transfer to Lieber, he was not able to see a specialized eye doctor until February

9, 2011. (Id. at 12-13.) Plaintiff complains that it took eighty days for him "to get to see a

specialized eye doctor about a condition that was urgent, and serious." (Id. at 13.) Plaintiff

states that when he arrived at Lieber, he "still had a little vision in [his] left eye" but "by the

time Plaintiff saw the ophthalmologist 80 days later he had no vision in his eye, and suffered

from excruciating pain for 50 days without any prescribed pain medication." (Id.)

Plaintiff also alleges that on November 23, 2010, he was placed in lock-up for "an

alleged disciplinary infraction," and that per regulation and policy, when an inmate is placed

in SMU, his property "is to be inventoried, packed and stored with an exception of legal

material, 2 pairs of boxers, 2 pairs of socks, towel, washcloth, 2 sheets, and 1 blanket." (Id.

at 14.) Plaintiff states that after two days in lock-up, he notified Defendant Lloyd that "he did

not have his sheets, mattress, towel, washcloth, socks or boxers" and that he did not have

"his legal property which he especially needed due to the fact of his working on a pending

legal case and pending deadline." (Id. at 15.) Plaintiff alleges he got a mattress after

sleeping on "hard steel without one" for four days, but that he still had no sheets or blanket

5

even though his "SMU cell was cold with no heat working and temperatures 20, 30, and 40 degrees outside." (Id.) Plaintiff states that he spent twenty-four days in lock up with no sheets, blanket, towel, washcloth, boxers, or socks before being told that his property "was supposedly lost." (Id.) Plaintiff complains that "all court orders, obtained evidence, legal research . . . and everything having to do with pending case no. 8:10-2079-HFF-BHH" was gone and that he "had no possible way of retrieving any of it." (Id.)[2]

Plaintiff states that on December 21, 2010, he filed a grievance and wrote a request to Warden McCabe concerning the conditions and property but heard nothing. (Id. at 16.) Finally, Plaintiff states that he spoke with Defendant Perry about his bedding and clothing and that Perry retrieved a blanket, pair of shower shoes, a laundry bag, and two pair of small boxers. (Id.) The boxers were not Plaintiff's size, but Sergeant Perry allegedly told Plaintiff to "take those or . . . get none." (Id.)

In his prayer for relief, Plaintiff states that he seeks compensatory and punitive damages from each Defendant. (Id. at 20.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597

---

[2]Plaintiff states that a motion to compel that he filed in this case was denied because he did not file a proof of service, but that "Plaintiff's proof of service certificate was one of many legal documents lost when Plaintiff's property disappeared . . . ." (Dkt. No. 19 at 17 of 20.)

F.3d 570, 576 (4th Cir. 2010) (citing <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" <u>Id</u>. (quoting <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)); <u>see also Perini Corp. v. Perini Constr., Inc</u>., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on August 15, 2011. (Dkt. No. 49.) Defendants contend they are entitled to summary judgment for several reasons. (<u>See</u> Dkt. No. 49-1.) The undersigned will address Defendants' arguments in turn.

### A. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001); <u>see Porter v. Nussle</u>, 534 U.S. 516 (2002); <u>Larkin v. Galloway</u>, 266 F.3d 718 (7th Cir. 2001) (exhaustion required even though the plaintiff claimed he was afraid); <u>see also Claybrooks v. Newsome</u>, 18 Fed. App'x 243 (4th Cir. Sept. 18, 2001) (applying <u>Booth v. Churner</u> to affirm the district court's denial of relief to the plaintiff).

Defendants summarize Plaintiff's claims and divide them into seven categories as follows:

> 1. Defendants Lt. Joseph Powell and Sgt. Leon Simmons and Warden Lavern Cohen at RCI, along with staff counselor Andrew Hodge, are alleged to have failed to protect the Plaintiff from his cellmate.

2. SCDC medical staff at RCI are alleged to have been deliberately indifferent to Plaintiff's medical needs in not allowing him to see a doctor in October 2010.

3. Mental Health Counselor Andrew Hodge is alleged to have failed to provide Plaintiff with mental health counseling.

4. Nurse Connelly, Nurse Scott and Nurse Kay at LCI are alleged to have been deliberately indifferent to Plaintiff's serious medical needs by refusing to allow him to receive medical treatment and denying him pain medication.

5. Lt. Lloyd and Sgt. Perry at LCI and SCDC staff at LCI are alleged to have denied Plaintiff washcloths, sheets, blankets and clean clothes.

6. Plaintiff alleges that SCDC personnel lost his legal property and he has had difficulty prosecuting his lawsuits as a result, thus denying him access to the courts.

7. Plaintiff alleges that Warden McCabe was aware of these conditions and refused to grant Plaintiff any of the relief he requested.

(Dkt. No. 49-1 at 2-3; see also Am. Compl.)

Defendants seek summary judgment on claims two through seven on the grounds that Plaintiff failed to exhaust his administrative remedies. (See Mem. in Supp. at 26.)[3] According to Defendants, Plaintiff did not grieve claim two or claim three,[4] and Plaintiff filed only Step 1 grievances for claims four through seven. (Id.) Defendants presented the Affidavit of Angela Hardin. (See Dkt. No. 49-7.) Ms. Hardin states that she is employed by

---

[3]Defendants state that "Claim 1 was non-grievable under SCDC policy." (Dkt. No. 49-1 at 26.)

[4]In his Response in Opposition, Plaintiff states that "Defendants added claims 2 and 3 for no apparent reason." (Dkt. No. 78-1 at 19 of 38.) Plaintiff states that he has not "at one time in this lawsuit raised any issues concerning Ridgeland Correctional Inst. Mental Health Counselor Andrew Hodge violated his rights, and Mr. Hodge is not a defendant in this case." (Id.) Plaintiff states simply that "claims 2 and 3 or [sic] not issues raised by Plaintiff in this lawsuit." (Id.) The undersigned notes that Andrew Hodge has not been named as a defendant in this case, and Plaintiff states that the current action does not pertain to what Defendants have identified as Claim 2 or Claim 3. To the extent such claims are considered part of the case sub judice, the undersigned recommends dismissal of what Defendants have identified as Claim 2 and Claim 3.

the South Carolina Department of Corrections ("SCDC") as an Inmate Grievance

Coordinator, where she currently supervises the inmate grievance process at nine SCDC

facilities. (Hardin Aff. ¶ 2.) In her Affidavit, Ms. Hardin states, *inter alia*,

> I have been asked to review the records of Inmate Robert Selest Drayton,
> #280585 in reference to the complaints contained in his lawsuit. . . . In
> reference to his claims, I submit this affidavit to establish that he initiated
> grievances on the claims raised in his Complaint, identified as Claims 1, 3,
> and 4 through 7. . . . However, Inmate Drayton either accepted the responses
> to his Step 1 Grievances, failed to go through Step 2 review and an Appeal
> to the Administrative Law Court, or the grievances are still pending and
> thererfore he failed to exhaust his administrative remedies. Inmate Drayton
> filed no grievances related to the claim identified as Number 2. . . .

(Id. ¶ 9.)

### 1. Administrative Remedies Sought on Claim 4

The claim identified by Defendants as Claim 4 is a claim for deliberate indifference

to a serious medical needs. Plaintiff claims that Defendants Connelly, Scott, and Kay were

deliberately indifferent to his serious medical needs, stating, "Plaintiff is still not being seen

in medical sick-call, still not provided with pain medication for injuries, . . . has not been seen

in medical sick-call for any medical problems since last year . . . despite constant and

numerous sick-calls and complaints." (Dkt. No. 19 at 1 of 20.) A review of Plaintiff's

Amended Complaint and Response in Opposition reveals that Plaintiff claims these

Defendants were deliberately indifferent in that they "delayed treatment and orders

prescribed by doctors and emergency room physician" because he did not see a specialized

eye doctor for three months, "despite referral from Ridgeland Correctional" Institution, and

"despite numerous complaints of excruciating pain in [Plaintiff's] eye area and rapid loss of

vision in eye." (Resp. in Opp'n at 2 of 38.) Plaintiff asserts these three Defendants "refused

to prescribe any pain medication that would assist Plaintiff in relief from chronic pain, and

continue to refuse proper medical attention." (Id.)

9

Ms. Hardin's Affidavit outlines the grievances Plaintiff filed with respect to his medical care:

> c. Inmate Drayton filed Step 1 Grievance No. LCI-0100-11 on January 22, 2011 complaining that he was being denied medical treatment. His grievance was denied and he was advised of appeal procedures but he did not file a Step 2 grievance.
>
> . . .
>
> e. Inmate Drayton filed Step 1 Grievance No. LCI-0186-11 on February 9, 2011 complaining that he was being denied medical treatment and he accepted the Warden's response.
>
> f. Inmate Drayton filed Step 1 Grievance No. LCI-0286-11 on March 4, 2011 complaining that he was being denied medical treatment. That grievance is still pending.[5]

(Hardin Aff. ¶ 12.) Attachment C to Ms. Hardin's Affidavit is a "Summary of Grievances" filed by Plaintiff that relate to the instant action. (See Hardin Aff. Ex. C.) Attachment C reveals that Plaintiff filed Grievance Number 1485-10 on December 21, 2010 requesting an ear, nose and throat doctor and indicating he was "not getting proper treatment." (Id.)

As an Exhibit to his Amended Complaint, Plaintiff filed numerous documents entitled "Request to Staff Member" and "Sick Call and Dental Request." (See Dkt. No. 19-2.) Although the exhibit contains some grievances, these grievances concern the assault by Inmate McIlwain and Plaintiff's request to be transferred to another institution–not the medical care received by Plaintiff. (See id.) Similarly, the exhibits to Plaintiff's Response in Opposition contain some grievances unrelated to this medical claim, but most of the documents therein are "Request to Staff Member" and "Sick Call and Dental Request" forms. (See Dkt. No. 78-3.)

_____

[5]Ms. Hardin's Affidavit was notarized on August 15, 2011.

10

The undersigned has reviewed the entire record and concludes that Plaintiff failed to exhaust his administrative remedies for Claim 4–the claim for deliberate indifference to serious medical needs–prior to filing this claim. Most of the documents in the record are simply "Request to Staff Member" or "Sick Call and Dental Request" forms, not grievances. Moreover, when Plaintiff did initiate formal grievances related to Claim 4, they were insufficient to exhaust his administrative remedies prior to filing his claim. For example, Step 1 Grievance No. LCI-0286-11 was filed on March 4, 2011, ___*after*___ Plaintiff filed his Amended Complaint.[6] In addition, Plaintiff filed Step 1 Grievance No. LCI-0186-11 on February 9, 2011, only a few days prior to filing his Amended Complaint. Administrative remedies on these two grievances were therefore not exhausted at the time of the filing of the Amended Complaint. Plaintiff filed Step 1 Grievance No. LCI-0100-11 on January 22, 2011, prior to filing his Amended Complaint but after filing his original Complaint. Similarly, it appears that Plaintiff filed Grievance Number 1485-10 on December 21, 2010, prior to filing his Amended Complaint but after filing his original Complaint. It is clear that Plaintiff failed to exhaust his administrative remedies on these grievances prior to filing his claim. There is no evidence that Plaintiff filed Step 2 grievances on these issues. In fact, it appears Plaintiff filed his Amended Complaint very close to the time the Warden's response to any Step 1 grievance was due. See Dkt. No. 49-7 at 10 of 39 (noting that under SCDC Policy GA-01.12, the Warden "will respond to the grievant in writing (in the space provided on SCDC Form 10-5, Step 1) . . . no later than 40 days from the date the grievance was formally entered into the OMS system by the Institutional Grievance Coordinator"). In short, none of Plaintiff's

---

[6]Plaintiff's Complaint is dated December 6, 2010, and it is stamped "received" by the United States District Court Clerk in Columbia, South Carolina on December 14, 2010. (See Dkt. No. 1.) Plaintiff's Amended Complaint is dated February 14, 2011, and is stamped "received" by the Clerk's Office in Charleston, South Carolina, on February 18, 2011. (See Dkt. No. 19.)

grievances with respect to Claim 4 had progressed through the grievance system prior to Plaintiff initiating that claim.

A plaintiff is not permitted to exhaust his administrative remedies while his lawsuit is pending; the PLRA requires administrative remedies to be exhausted prior to filing suit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The prisoner ... may not exhaust administrative remedies during the pendency of the federal suit."); Grier v. Mitchell, No. 9:11-0042-TMC, 2011 WL 5517242, at *1 (D.S.C. Nov. 1, 2011) ("[E]xhaustion is a precondition to filing suit in federal court." (citing Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008))); Johnson v. Ozmint, 567 F. Supp. 2d 806, 815 (D.S.C. 2008).

The undersigned notes that in his Response in Opposition, Plaintiff claims that exhaustion is "futile" because he is not receiving responses to his grievances in a timely manner. (See Dkt. No. 78-1 at 3-4.) Plaintiff states that per SCDC's policy, the "total exhausting of administrative remedies from Step 1 to Step 3 Administrative Law Court takes no longer than 150 days without an extension" and "no longer than 180 days" with an extension. (Id. at 3.) Plaintiff states, "Every grievance filed concerning Plaintiff's claims that occurred at Lieber were never responded to on time and did not meet the deadline requirements per policy." (Id. at 4.)

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v. Lappin, 415 Fed. App'x 491, 492 (4th Cir. Mar. 10, 2011) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir.

12

2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

The undersigned recommends concluding that any defects in exhaustion of Claim 4 were not procured from the action or inaction of prison officials. As noted above, to the extent Plaintiff filed any grievances related to his medical needs prior to bringing the instant claim, they were Step 1 grievances, and they had not progressed through the grievance system at the time the Amended Complaint was filed. The undersigned therefore recommends granting summary judgment to Defendants on Plaintiff's claim for deliberate indifference to serious medical needs (Claim 4) for failure to exhaust administrative remedies.

### 2. Administrative Remedies Sought on Claim 5 and Claim 6

In Claim 5, Plaintiff alleges that staff at LCI denied him wash cloths, sheets, blankets, and clean clothes; in Claim 6, Plaintiff complains that SCDC personnel lost his legal property and that as a result, he had difficulty prosecuting his lawsuits, thus denying him access to the courts. Ms. Hardin's Affidavit outlines the grievances Plaintiff filed with respect to Claim 5 and Claim 6 as follows:

> a. Inmate Drayton filed Step 1 Grievance No. LCI-1433-10 on December 8, 2010 complaining that he had no change of clothes. The grievance was denied on the grounds that investigation revealed he had been provided with a change in jumpsuit. He was advised of appeal procedures but he did not file a Step 2 grievance.
>
> b. Inmate Drayton filed Step 1 Grievance No. LCI-0099-11 on January 22, 2011 complaining that his property had been lost and he accepted the IGC's response.
>
> . . .

(Hardin Aff. ¶ 12.)[7]

The Warden responded to Grievance No. LCI -1433-10 on March 14, 2011, stating that because the investigation revealed that Plaintiff had received a change in jumpsuit, the Warden "consider[s] the matter closed." (Hardin Aff. Ex. C6.) The Warden's response thus came *after* the filing of the Amended Complaint, and there is no evidence that Plaintiff filed a Step 2 grievance on this issue. Turning to LCI-0099-11, the undersigned notes that Plaintiff filed this grievance after he filed his original Complaint but prior to the time Plaintiff filed his Amended Complaint. Again, however, Plaintiff filed his Amended Complaint very near (or even possibly before) the time for the Warden to respond to the Step 1 grievance had passed, and there is no evidence Plaintiff filed a Step 2 grievance on this issue. As noted above, a plaintiff is not permitted to exhaust his administrative remedies while the lawsuit is pending; the PLRA requires administrative remedies be exhausted prior to filing suit. Plaintiff therefore failed to exhaust his administrative remedies with respect to Claim 5 and Claim 6 prior to filing these claims. In addition, the undersigned recommends concluding that any defects in exhaustion of these claims were not procured from the action or inaction of prison officials. The only grievances Plaintiff filed with respect to these claims were Step 1 grievances, and they had not progressed through the grievance system at the time the Amended Complaint was filed. The undersigned thus recommends granting summary judgment to Defendants on Plaintiff's claims related to his lost property and denial of wash cloths, sheets, blankets, and clean clothes (Claim 5 and Claim 6.)[8]

---

[7]More specifically, in Grievance No. LCI-0099-11, dated January 22, 2011, Plaintiff complains that he has been in lock-up since November 23, 2010 "without sheets, towels, wash cloths, socks and etc." (See Dkt. No. 49-7 at 29 of 39.)

[8]Defendant Warden McCabe, who has been employed with SCDC for twenty-five years, is Warden at Lieber Correctional Institution. (See McCabe Aff. ¶ 1; Dkt. No. 56-1.) The attack on Plaintiff by Inmate McIlwain occurred at Ridgeland, not Lieber, and McCabe had no personal involvement with respect to that attack. It is well-settled that in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations."

## B. Failure to Protect Claim (Claim 1)

In Plaintiff's first claim, he contends that Defendants violated his constitutional rights by failing to protect him from the assault by Inmate McIlwain. "The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 722-23 (4th Cir. 1994) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). As the Fourth Circuit stated in Brown,

> Not every injury suffered by a prisoner at the hands of another establishes liability against a prison official, however. To make a valid claim under the Eighth Amendment, a prisoner must satisfy two elements. First, "the deprivation alleged must be sufficiently serious." Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir.2003) (internal quotation marks and citation omitted). "To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions." Id. . . . .
>
> Second, a prisoner must demonstrate that the prison official had a "sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). When an inmate makes a challenge under the Eighth Amendment, "the requisite state of mind is one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted). A prison official demonstrates deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Id. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Case v. Ahitow, 301 F.3d 605, 607 (7th Cir.2002).

Brown, 612 F.3d at 723.

In the case *sub judice*, Defendants do not contend they are entitled to summary judgment on Claim 1 for a failure to exhaust administrative remedies. However, a review of the grievances Plaintiff filed is relevant to the analysis of the failure to protect claim.

---

Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). McCabe therefore cannot be held liable for the attack upon Plaintiff. Moreover, while Plaintiff does seek to assert claims of deliberate indifference to serious medical needs, the loss of property, and the denial of necessities, all of which are alleged to have occurred at Lieber, Plaintiff failed to exhaust his administrative remedies as to those claims. The undersigned therefore recommends that Defendant McCabe be granted summary judgment on all claims against him; these claims are also identified as Claim 7.

15

Plaintiff filed a "Request to Staff Member" addressed to Defendant Cohen on August 30, 2010. (See Dkt. No. 49-2 at 14 of 42.) In that Request to Staff Member, Plaintiff complains that his roommate is masturbating in front of him and states that Plaintiff "went to Sgt. Morris last week on 8-25-2010 concerning the matter because [he] wanted to avoid . . . getting into any trouble or conflict with the inmate." (Id.) Plaintiff further states therein,

> I've said something to the inmate on several occasions, and I'm certain that if I say anything else to him that a physical altercation will erupt . . . . I'm trying very hard to refrain from confronting this guy again because I know it will escalate into a physical confrontation.

(Id.) This document is attached to Defendant Cohen's Affidavit, wherein Cohen states that Plaintiff "began to complain about his cellmate, claiming that the cellmate was masturbating, on August 30, 2010," but that "this is not considered an emergency." (Cohen Aff. ¶ 6.) Another Request to Staff addressed to Warden Cohen was attached to Cohen's Affidavit; this Request is dated September 2, 2010. (Dkt. No. 49-2 at 16 of 42.) In that Request to Staff Member, Plaintiff stated (verbatim),

> Sir I know I just wrote you concerning the cell situation and roommate situation. I'm going to bring the issue that sums everything up to you sir. **I do not feel safe** being on this lock-up or this yard sir. . . . I am also being forced to be in a room with an inmate who masturbates in front of me continuously, the inmate was moved out my room but moved back in the next day because it wasn't agreed on through classification. I have since had to endure this inmate doing the behavior, and I have been told by the SMU Lt. that you basically want us to fight because you ordered him under no circumstances to move any inmate no matter if it's an emergency. So I'm basically being forced to either watch this inmate masturbate or get into a physical confrontation and catch more lock-up time. And last of all the SMU Dorm Lieutenant is telling other inmates in SMU that I wrote you complaining and telling about . . . things that happened in SMU and that's why inmates are not allowed to make room changes anymore. Him telling the inmates that have started me getting a lot of threats and "snitch" accusations. That is a major security breach. . . . That is putting my safety in jeopardy. . . . **Due to all the issues I have just listed leading up to the last incident involving the Lt. I do not feel safe, and I wish to be transferred to another SMU** to complete the remainder of my D.D. time. I only have less than 90 days left,

and **I fill both my safety and well-being is in jeopardy. . . . I don't feel safe being here**. . . .

(Id. at 16-17 (emphasis added).) Warden Cohen's response, dated September 13, 2010, provides that "[t]here are no separations in the SCDC computer system indicating that you can not be housed at RCI. As stated previously, once your Disciplinary Detention Time is completed, you will be transferred to a level 3 facility." (Id. at 16.)

Plaintiff complains about his cell mate in Grievance Number RCI-0854-10, which is dated September 2, 2010, and marked as "received" on September 13, 2010. (See Dkt. No. 49-2 at 34 of 42.) In this grievance, Plaintiff states,

> I am writing this grievance concerning a situation where I'm in the room with an inmate who pulls his penis out and masturbates whenever a female comes on east wing. This inmate does it in front of me. I have a right not to be subject to this type of stuff. Trying to avoid a physical confrontation with the inmate. . . . I notified Sgt. Morris of the incidents and the problems and let him know I was trying to avoid a physical confrontation but that I couldn't keep allowing this inmate to masturbate in front of me . . . Sgt. Morris moved the inmate to another room. The next day the inmate was moved back in my room stating that all moves concerning roommate changes had to go through classification first. I explained to Sgt. Simmons, who moved the inmate back into the room with me, that we were more than likely going to come to a physical confrontation.

(Id.) In the "Action Requested" section of this grievance, Plaintiff asked that "this inmate be moved to another cell, in order to prevent the potential physical confrontation that is sure to come, every time I say something to the inmate regarding this behavior he either ignores me or gets verbally hostile." (Id.) On October 8, 2010, this grievance was returned to Plaintiff "as unprocessed because . . . cell assignments are non-grievable." (Id.)

Plaintiff also filed two grievances concerning the attack after it happened, both of which were returned as unprocessed because "administrative assignments (transfers) are non-grievable": RCI-0908-10 and RCI 0910-10. (See Dkt. No. 49-2 at 39-42.) In RCI 0908-10, the "Action Requested" section of the Step 1 grievance stated,

> That I be transferred immediately from this institution, I don't feel safe around these officers or inmates, my pleas and concerns were constantly ignored and my grievances are also, and I have a continuous fear for my life and well-being while at Ridgeland. Also that those responsible for ignoring my pleas and complaints as well as inmate McIlwain be punished for their actions.

(Dkt. No. 49-2 at 39 of 42.) In RCI-0910-10, Plaintiff stated that he was "grieving the issue of . . . being assaulted on 9-18-2010 by [his] roommate inmate McIlwain." (Id. at 41.) Plaintiff states that he wants to transferred from Ridgeland, for Inmate McIlwain to be charged for the attack, that "the parties responsible for leaving [him] in the cell with [Inmate McIlwain] even after [his] pleas and complaints be sanctioned," and that SCDC pay for all of Plaintiff's medical bills for the injuries sustained in the attack. (Id.)

Defendants contend that they are entitled to summary judgment on Claim 1 because Plaintiff "makes no claim that the officers or prison officials were aware of any threats against him." (Mem. in Supp. at 30.) Defendants state,

> [Plaintiff's] sole complaint on this issue is that his cellmate was masturbating and he was afraid this might cause Plaintiff to fight with him. This situation was not considered a threat to Plaintiff's safety as, unfortunately, masturbation is not uncommon in a prison setting. Plaintiff himself has an extensive history of public exhibitionism and masturbation. Furthermore, there was no prior history between the Plaintiff and his cellmate and the Plaintiff never told officers that he was in fear for his safety or requested protective custody. . . .

Id.

The undersigned recommends denying Defendants' Motion for Summary Judgment on Claim 1 because (a) Plaintiff has presented evidence that he suffered a significant physical injury as a result of the attack, and (b) there is a genuine issue of material fact regarding whether Defendants knew of and disregarded an excessive risk to Plaintiff's safety. Although Defendants contend they had no knowledge of a threat to Plaintiff's safety, there is evidence in the record that they did in fact have such knowledge. In a "Request to Staff Member" dated August 30, 2010, Plaintiff complained that his roommate was

18

masturbating and that Plaintiff was trying to "refrain from confronting" his cell mate because he "kn[ew] it [would] escalate into a physical confrontation." (Dkt. No. 49-2 at 14 of 42.) A few days later, a Request to Staff Member dated September 2, 2010 indicates that Plaintiff "do[es] not feel safe." (Dkt. No. 49-2 at 16-17.) Plaintiff also filed Grievance No. RCI-0854-10, dated September 2, 2010, and stamped as "received" on September 13, 2010, in which Plaintiff states that he is "[t]rying to avoid a physical confrontation with the inmate" and that Plaintiff and his roommate were "more than likely going to come to a physical confrontation." (Dkt. No. 49-2 at 34 of 42.) Plaintiff asked the inmate to be moved to another cell to "prevent the potential physical confrontation that is sure to come." (Id.) Furthermore, Plaintiff contends that Inmate McIlwain was in lock-up because after an officer approached McIlwain "about his behavior," McIlwain "became extremely violent and a physical confrontation transpired." (Dkt. No. 78-1 at 5.) And there is evidence that one officer perceived the risk to Plaintiff as sufficient to warrant moving Inmate McIlwain to another cell. The undersigned concludes that, on these facts, a reasonable jury could return a verdict in favor of Plaintiff on the claim for failure to protect (Claim 1). The undersigned therefore recommends denying summary judgment on this claim.[9]

---

[9]Defendants moved for summary judgment on Claim 1 on several other grounds, all of which the undersigned recommends rejecting. For example, Defendants contend they are entitled to Eleventh Amendment immunity. (See Mem. in Supp. at 27.) However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991). Defendants also move for summary judgment on the grounds of qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). In the instant case, if Defendants had notice only of the fact that McIlwain was masturbating in front of Plaintiff, Defendants would likely be entitled to qualified immunity. However, taking the facts in the light most favorable to

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 49) be GRANTED IN PART and DENIED IN PART. More specifically, the undersigned recommends denying Defendants' Motion for Summary Judgment with respect to the Plaintiff's claim against Defendants Cohen, Powell, and Simmons for failure to protect against an inmate assault (Claim 1). The undersigned recommends granting Defendants' motion on all other claims.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

January 11, 2012
Charleston, South Carolina


**The plaintiff's attention is directed to the important notice on the next page.**

_____

Plaintiff, Defendants knew a physical altercation between the inmates was imminent but yet chose to house the inmates in the same cell. The undersigned therefore concludes Defendants are not entitled to summary judgment on these grounds.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).