IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Robert Selest Drayton,                    )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        C/A No. 2:10-3171-TMC
                                          )
                                          )
Warden LeVern Cohen,                      )
Ridgeland Correctional                    )
Institution; Lt. Joseph Powell;           )
Sgt. Simmons; Nurse K. Kay;               )        **OPINION & ORDER**
Lt. D. Lloyd; Sgt. J. Perry;              )
Mrs. Connelly, Medical Supervisor         )
of Lieber Correctional Institution;       )
Nurse Jennifer Scott; and Wayne           )
McCabe, Lieber Correctional               )
Institution,                              )
                                          )
                                          )
                Defendants.               )
_____ )

        Plaintiff, an inmate proceeding *pro se*, seeks relief pursuant to 42 U.S.C. § 1983.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., all pre-trial

proceedings were referred to a Magistrate Judge.  On August 15, 2011, Defendants

filed a motion for summary judgment.  (Dkt. # 49). On November 23, 2011, Plaintiff filed

a response opposing Defendants' Summary Judgment Motion.  (Dkt. # 78).  On January

11, 2012, Magistrate Judge Bruce H. Hendricks issued a Report and Recommendation

("Report") recommending that Defendants' Summary Judgment Motion be granted in

part and denied in part.  (Dkt. # 84).  Specifically, the Magistrate Judge recommends

denying Defendants' Motion for Summary Judgment with respect to the Plaintiff's claim

against Defendants Cohen, Powell, and Simmons (referred to herein collectively as

Defendants) for failure to protect against an inmate assault and granting summary

judgment on the remaining claims.  For the reasons explained below, the court declines

to adopt the part of the Report which recommends that summary judgment be denied on the failure to protect claim and instead grants Defendants' summary judgment on all claims.

The Magistrate Judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge provided Plaintiff a notice advising him of his right to file objections to the Report. (Dkt. # 84 at 21).  Plaintiff timely filed objections to the Report on February 8, 2012.  (Dkt. # 91).  Defendants also timely filed objections to the Report on February 14, 2012. (Dkt. # 94).  Plaintiff also filed a reply in response to Defendants' objections on February 23, 2012. (Dkt. # 95).[1]

### Summary Judgment Standard

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material facts exists, the evidence of the non-moving party is to be believed and all justifiable

---

[1]As an initial matter, the court notes that in his reply Plaintiff states that Defendants' objections were untimely filed.  Reviewing the docket, objections to the Report were due by January 30, 2012.  On January 25, 2012, Defendants filed a motion for an extension of time within which to file objections.  (Dkt. # 86).  The court granted the motion and accordingly Defendants had until February 14, 2012, to file their objections.  (Dkt. 87).  It appears that, due to a clerical error, the Plaintiff may not have been mailed a copy of this order at the time it was entered.

inferences must be drawn in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986). However, the existence of a mere scintilla of evidence in support of the nonmoving party's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### Discussion

In her Report, the Magistrate Judge fully sets out the facts and procedural history, including the administrative remedies pursued by Plaintiff, and the court incorporates that portion of the Report herein.

### Plaintiff's Objections

In his objections, Plaintiff argues that the Magistrate Judge erred in recommending that Claims 4 (medical indifference claim), 5 (conditions of confinement claim regarding denial of wash cloths, sheets, blankets, and clean clothes), and 6 (denial of access to courts claim in regard to lost property) be dismissed for Plaintiff's failure to exhaust his administrative remedies.[2] Plaintiff also requests that if the court finds Claim 4 was not properly exhausted, that it be dismissed without prejudice. (Pl.'s Objections at 3).

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first

---

[2]The court notes that Plaintiff did not file objections relating to Claims 2, 3, and 7.

exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002). To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the prison provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion is a precondition to filing suit in federal court. *Id.* ("prisoners must exhaust . . . prior to filing suit in federal court") (emphasis added). Accordingly, courts have held that "prisoner[s], therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Green v. Rubenstein*, 644 F.Supp.2d 723, 743 (S.D.W.Va.2009) (*quoting Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir.1999)); *see also Johnson v. Ozmint,* 567 F.Supp.2d 806, 815 (D.S.C.2008) (similar holding). To permit exhaustion during the pendency of the litigation would turn the exhaustion requirement on its head.[3]

Plaintiff argues that he filed several grievance relating to Claim 4 on the following dates: December 21, 2010, January 22, 2011, February 9, 2011, and March 4, 2011.

---

[3]The court notes that the Magistrate Judge used the date Plaintiff filed his amended complaint, February 18, 2011, in her analysis on the exhaustion issue. The court does not believe that the date an amended complaint is filed is the correct date to use in determining if a plaintiff has exhausted his administrative remedies prior to filing an *action.* Plaintiff's filing an amended complaint does not change the date by which he had to exhaust his administrative remedies. *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269 (D.C.Cir. 2001). "[I]f the PLRA meant only that prisoners had to exhaust administrative remedies before filing an amended complaint, they would have no incentive to exhaust those remedies prior to filing suit. The prisoners could complete the grievance process while suit was pending, avoiding dismissal by later amending their complaint. This would defeat the very purpose of the PLRA exhaustion requirement . . ." *Id.* However, as the Magistrate Judge correctly concluded Plaintiff still did not exhaust his administrative remedies, even using the later date on which he filed his amended complaint.

(Obj. at 1-2).  He also states that he filed an initial request to staff with Warden McCabe in December and grievances relating to Claims 5 and 6 on January 22, 2011.  Accepting Plaintiff's statements as true, he did not exhaust his administrative remedies prior to the date he filed this action.

The  Plaintiff's complaint was received and docketed by the Court on December 21, 2010. (Dkt. # 1.)  However, the envelope was postmarked December 13, 2010, and Plaintiff signed it December 6, 2010.   Absent specific indication by prison authorities as to the date received for mailing, courts look to the date the petition is executed by the inmate or the postmark date. *Houston v. Lack*, 487 U.S. 266, 275 (1988)(emphasizing importance of objective indicia of delivery to alleviate need to "dispute a prisoner's assertions that he delivered the paper on a different date."); *See, e.g., Marsh v. Soares*, 223 F.3d 1217, 1218 n. 1 (10th Cir. 2000) ("Liberal application of the mailbox rule . . . causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed.") and *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir.2009) (considering postmark as evidence of date of mailing in applying prison mailbox rule).[4] Therefore, the objective indicia lead to the finding that Plaintiff's complaint was filed December 6, 2010, the date he signed it.

Even assuming Plaintiff filed a request to staff on December 1, 2010, and did not receive a timely response as he alleges, he has not shown he exhausted his administrative remedies *prior to filing this action*.  When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted

---

[4]The envelope containing the complaint was stamped by the prison mailroom, but it appears that part of the envelope was folded over when it was scanned into the docker and the original is unfortunately unavailable.  (Dkt. # 1 - Attach. # 2.)  Therefore, the court cannot use the prison mailroom stamp date in determining when Plaintiff filed his complaint.  *Houston v. Lack*, 487 U.S. 266 (holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

under the PLRA. *See, e.g., Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir.1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). However, clearly, here, Plaintiff did not wait for the time to run before he filed this action as this action was filed on December 6, 2010. As Plaintiff did not exhaust his administrative remedies as to Claims 4, 5, and 6 prior to bringing this action, Defendants should be granted summary judgment on these claims and these claims should be dismissed without prejudice.

**Defendants' Objections**

In their objections, Defendants object to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiff's claims for failure to protect against Defendants Cohen, Powell, and Simmons. Defendants contend that while the Magistrate Judge relied on Plaintiff's allegations as set forth in the Complaint, the court should also consider the documents referenced by Plaintiff in his Complaint and filed by Defendants as exhibits to Warden Cohen's affidavit. (Defs.' Objections at 2).

Specifically, Defendants argue:

While the Plaintiff's Complaint alleges that Plaintiff Drayton had advised Corrections' officials in Requests to Staff that upon confronting Inmate McIlwain he, "immediately got hostile with Plaintiff and threatened Plaintiff with physical retaliation if Plaintiff didn't mind his own business," this allegation is not supported in the document referenced by the Plaintiff but made an attachment to the Affidavit of Warden Cohen. In each document referenced in Plaintiff's Complaint and placed into the record by Defendants, the Plaintiff made statements that the Plaintiff did not want to be "forced to take physical action" and the Plaintiff did not want to "incur any disciplinary charges." At no time in any of the documents before the Court did the Plaintiff make any direct allegation that inmate McIlwain had threatened him in any way or had been anything other than an annoyance in displaying the same sexual proclivities of public masturbation that resulted in the Plaintiff also being on detentionary lockup.

(Defs.' Objections at 4). Defendants also argue that although Plaintiff reported that

Inmate McIlwain was masturbating in front of Plaintiff and that he thought this would lead to a fight, Plaintiff never reported that he feared for his safety and did not request he be placed in protective custody.

Reviewing Plaintiff's grievances, on August 10, 2010, Plaintiff stated that he had served 6½ months of his 10-month detention time and he inquired about his remaining time in SMU. He requested that he be allowed to return to the general population and, if not, he be sent to "whatever yard [he] should be going to." (Defs.' Mem. Supp. Summ. J. Mot. Attach. 1 Ex. A). This request was denied. *Id.*

On August 30, 2010, Plaintiff filed a request to staff with Defendant Cohen in which he stated that his cellmate in SMU would masturbate every time a female comes into the wing or the cell door without any regard or respect for plaintiff or the female. He stated that he spoke with Sgt. Morris about the issue because he "wanted to avoid . . . getting into any trouble or conflict with the inmate, especially with [his] lock-up time almost being over." (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 1 Ex. C). He stated that on August 25, 2010, Sgt. Morris moved the inmate to another room to avoid the inmates getting into a confrontation, but the next day the inmate was moved back because all inmates moves are to go through classification first. *Id.* He complained that the same type of behavior was continuing, and that he was certain that if he said anything else to his cellmate, that physical altercation would occur. *Id.* He complained that his cellmate's behavior was disrespectful and inappropriate and he stated that he considered the masturbation to be a homosexual act and he had the right not to be subject to such acts. *Id.* He asked that the Warden "please get this nasty disrespectful inmate from out of this room" and he stated that he was trying to "refrain from confronting this guy again because [he knew] it [would] escalate into a physical confrontation." *Id.*

On September 2, 2010, Plaintiff filed another request to staff with Warden Cohen.

(Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 Ex. D).  In this request to staff, Plaintiff

stated, quoted verbatim:

> Sir I know I just wrote you concerning the cell situation and roommate situation. I'm going to bring the issue that sums everything up to you sir. *I do not feel safe being on this lock-up or this yard sir*. I have been here 5 months and I have been putting up with a lot of violations of my rights, from being refuse mental health treatment as far as not seeing the Doctor for Mental Health yet even though I'm labeled Mental Health and was coming off a Mental Health Crisis right before I came to this yard.  But I've been continuously denied Mental Health treatment which is deemed serious medical treatment, I've also been denied appropriate medical attention when I comes to injuries sustained at Kirkland.  I've been violated as afar as my legal mail correspondences concern, as well as regular mail, my grievances have been lost or misplaced when I wrote them concerning these issues.  I am also being forced to be in a room with an inmate who masturbates in front of me continuously. The inmate was moved out my room but moved back in the next day because it wasn't agreed on through classification. I have since had to endure this inmate doing the behavior. And I have been told by the SMU Lt. that you basically want us to fight because you ordered him under no circumstances to move any inmate no matter if it's an emergency. So I'm basically being forced to either watch this inmate masturbate or get into a physical confrontation and catch more lock-up time. And last of all the SMU Dorm Lieutenant is telling other inmates in SMU that I wrote you complaining and telling about . . . things that happened in SMU and that's why inmates are not allowed to make room changes anymore. *Him telling the inmates that have started me getting a lot of threats and "snitch" accusations. That is a major security breach. . . . That is putting my safety in jeopardy*.  I asked the Lt. About it and he said he only told the inmates about an incident which occurred involving me.  But this man didn't have a right to discuss me with other inmates period.  *He made my name bad on lock-up and cause me to gets threats and to be labeled a "snitch."  He is putting me in jeopardy. Due to all the issues I have just listed leading up to the last incident involving the Lt. I do not feel safe*, and I wish to be transferred to another SMU to complete the remainder of my D.D. time. I only have less than 90 days left, and I fill both my safety and well-being is in jeopardy. I don't want more D.D. time which will certainly happen if I have to continue to watch this inmate masturbate, and none of my important grievances are even looked at, they are being lost, and I've been repeatly threaten due to unprofessionalism of Lt. Powell's part. *Sir I'm asking that you transfer me to another lock-up due to all these circumstances*.  I only have less than 90 days left and I will have completed my whole D.D. time, and I'm due to be transferred anyway because of my scoring out for level 3.  I don't feel safe being here.  Please get back to me at your earliest convenience.

(Defs'. Mem. Supp. Summ. J. Mot. Attach # 2 - Ex. D).  On September 13, 2010, Warden

Cohen responded that "[t]here are no separations in the SCDC computer system indicating that you can not be housed at RCI. As stated previously, once your Disciplinary Detention Time is completed, you will be transferred to a level 3 facility."

On September 2, 2010, Plaintiff also filed a Step One grievance, (Greivance No. RCI-0854-10), in which he stated, quoted verbatim:

> I am writing this grievance concerning a situation where I'm in the room with an inmate who pulls his penis out and masturbates whenever a female comes on east wing. This inmate does it in front of me. I have a right not to be subject to this type of stuff. Trying to avoid a physical confrontation with the inmate; I have on numerous occasions (sic) only to be ignored. I notified Sgt. Morris of the incidents and the problems and let him know I was trying to avoid physical confrontation but that I couldn't keep allowing this inmate to masturbate in front of me continuous when a female comes on the wing. Sgt. Morris moved the inmate to another room. The next day the inmate was moved back to my room stating that all moves concerning room changes had to go through classification first. I explained to Sgt. Simmons, who moved the inmate back into the room with me; that we were more than likely going to come to a physical confrontation. Sgt. Simmons said that the inmate would be going to the yard the next day so to just hang in there. The next day he didn't go to the population but he was masturbating when the nurse cam through to give out meds. Most nurses or females don't even look into the cell but that doesn't stop him from pulling out his penis exposing it and masturbating right in front of me. I then wrote a request form to the Dorm Lieutenant concerning the issue and asking him to please move the inmate out of the room with me. I explained what was going on and that the inmate had been moved out of the room but was moved back until it was brought in front of classification. I explained I was trying to avoid physical confrontation especially since I have less than 90 days left of my 10 month DD time. Lt. Powell said that he couldn't move anyone because the Warden said all room changes are to go through him. I asked Lt. Powell what if it's an emergency? And Lt. Powell said that "basically the Warden wants ya'll to fight and get in trouble because he said under no circumstances are room changes to be made without going through him." That was the Lt. Words verbatim. So, I wrote a request to Warden Cohen explaining the situation and the potential problems. I wrote that request 8-27-2010. This inmate is still in the room doing the same thing and I feel as if my rights are being violated because I am being forced to endure this behavior by keeping this guy in the room with me. I've been on lock-up since February 4th and been in this same room since April 15th. I have never had to go through this, and this inmate was brought into this room about 2½ or 3 weeks ago roughly and I have been having to endure this ever since. This is wrong and against my rights, and I have warned the appropriate people of the potential conflict and I have still been ignored. *Though it's against the rules to fight it's against my*

*right to be forced to witness this. . . .*

(Defs'. Mem. Supp. Summ. J. Mot. Attach # 2 - Ex. I-1). He requested "that this inmate be moved to another cell, in order to prevent the potential physical confrontation that is sure to come. Every time I say something to the inmate regarding this behavior he either ignores me or gets verbally hostile." *Id.* On October 8, 2010, this grievance was returned to Plaintiff "as unprocessed because . . . cell assignments are non-grievable." *Id.* Plaintiff also filed two grievances concerning the attack after it happened, RCI-0908-10 and RCI 0910-10, both of which were returned unprocessed because "administrative assignments (transfers) are non-grievable." (Dkt. # 49-2 at 39-42.)

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not all injuries at the hands of other prisoners are actionable. In a failure-to-protect claim, a prisoner must show, first, that he was incarcerated under conditions posing a substantial risk of serious harm, and second, that prison officials acted with deliberate indifference. *Id.* at 834. There is no question that Plaintiff suffered a significant physical injury during a physical altercation with his cellmate. The issue here revolves around whether Plaintiff can meet the second prong.

To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. *Id.* A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Id.* at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Deliberate indifference in the context of a failure to protect claim means that a defendant both "knows of *and* disregards an excessive risk to inmate health or safety; the official must

10

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir.1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir.1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety."). Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"Of the many difficulties in managing prisons rife with acts of violence, perhaps the most difficult is discerning who is actually at risk of being harmed and who is simply taking advantage of a dangerous environment to manipulate a change in housing status." *Thompson v. Shearin,* 2011 WL 5118411 (D.Md. 2011). For obvious reasons, courts have widely rejected any notion that a prisoner has any constitutional right to choose his cellmate. *See Murray v. Bledsoe*, 650 F.3d 246 (3rd Cir., 2011) ( per curiam); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir.1993); *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir.1984). This truism holds even if a plaintiff's cellmates are "annoying, offensive, strange, rude," or otherwise undesirable as living companions. *Dunbar v. Caruso*, 2011 WL 3474004 (E.D.Mich., July 12, 2011) (*quoting Blue v. Knowlin*, 2009 WL 2843315, at *4 (D.S.C. Aug.31, 2009)). Furthermore, in a prison setting, confrontations among inmates are daily occurrences.

In order to prove the objective element of his claim, Plaintiff must do more than allege a generalized concern for his safety and welfare. The facts alleged by Plaintiff fall short of the requisite standard because his requests to staff expressed no more than a

11

generalized concern that he would be drawn into a confrontation with McIlwain based upon Plaintiff's disdain for McIlwain's behavior. As set forth above, in his request to staff, Plaintiff states, "I'm basically being forced to either watch this inmate masturbate or get into a physical confrontation and catch more lock-up time." As the court stated in *Blue v. Knowlin*, 2009 WL 2843315 (D.S.C. 2009),

> [A]t most, Plaintiff alleges that he cannot confront his cell mate about his unacceptable behavior for fear that they would then get into a physical fight. Even liberally construed, this is not a situation of a substantial risk of an almost certain beating. Plaintiff can choose to remain quiet to the cell mate and pursue his grievances with prison officials. Also, Plaintiff and the cell mate could have a discussion about the issues without physical violence.

Likewise, here, there is no evidence that McIlwain presently posed a serious risk of violence to Plaintiff. As Plaintiff complained to Defendants, when he did confront McIlwain about his behavior, McIlwain either ignored Plaintiff or became *verbally* hostile. Plaintiff never complained to Defendants that McIlwain had assaulted him or even physically threatened him prior to the assault. Verbal threats alone do not result in a "substantial risk of serious harm." *See Edmonds v. Bendrick*, 2008 WL 318263 (E.D.Va. Feb.1, 2008)(stating that "verbal threats alone do not place plaintiff at risk of serious harm").

Finally, the court notes that in his requests to staff, Plaintiff alleges other reasons for the fear for his safety. He alleges he was labeled a "snitch." Plaintiff stated that the Dorm Lieutenant had spoken with other inmates about Plaintiff's complaints regarding SMU and the other inmates threatening him and accused him of being a "snitch." Plaintiff referred to this "a major security breach. . . . that is putting my safety in jeopardy." Even if the court could conclude that Defendants were aware of the risk of harm to Plaintiff, the evidence in the record simply is not sufficient to show that Defendants were deliberately indifferent to the consequences that might flow from his

continued incarceration in a cell with McIlwain.

## CONCLUSION

Based on the foregoing, after a thorough review of the Report and the record in this case, the court declines to adopt the part of the Report and Recommendation which recommends denying Defendants' summary judgement on the failure to protect claim. The court adopts the remaining portions of the Report.

Accordingly, Defendants' Motion for   Summary Judgment (Dkt. # 49) is **GRANTED** and this action is dismissed. Plaintiff's Claims 4, 5, and 6 are dismissed **without prejudice**.   Plaintiff's failure to protect claim (Claim 1) is dismissed **with prejudice**. Further, Plaintiff's Motion to Appoint Counsel (Dkt. # 92) is **DENIED** as moot.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

February 29, 2012
Greenville, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.